**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| OKLAHOMA FIREFIGHTERS PENSION AND RETIREMENT SYSTEM, *et al.*, Derivatively on Behalf of Nominal Defendant THE BOEING COMPANY, | ) | |
| Plaintiffs, | ) | Civil Action No. 1:24-cv-01200 (LMB/LRV) |
| v. | ) | Hon. Leonie M. Brinkema |
| DAVID L. CALHOUN, *et al.*, | ) | |
| Defendants, | ) | |
| - and - | ) | |
| THE BOEING COMPANY, | ) | |
| Nominal Defendant. | ) | |

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR A STAY</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................1

ARGUMENT ....................3

I. THE SECURITIES ACTION APPEAL HAS NO BEARING ON THIS ACTION ....................3

II. A STAY WOULD UNDERCUT JUDICIAL ECONOMY ....................6

III. THE INDIVIDUAL DEFENDANTS FACE NO PREJUDICE ABSENT A STAY ....................8

IV. A STAY WOULD SIGNIFICANTLY PREJUDICE PLAINTIFFS AND BOEING ....................12

CONCLUSION ....................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*,
2024 WL 3694533 (N.D. Ill. Aug. 7, 2024) ....................11

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....................4

*Atl. Coast Pipeline, LLC v. 1.52 Acres, More or Less, in Nottoway Cnty., Va.*,
2019 WL 4871481 (E.D. Va. Jan. 31, 2019) ....................9

*Aventis Pharma Deutschland GMBH v. Lupin Ltd.*,
403 F. Supp. 2d 484 (E.D. Va. 2005) ....................3

*Brenner v. Albrecht*,
2012 WL 252286 (Del. Ch. Jan. 27, 2012)....................10

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
2005 WL 280345 (S.D. Ind. Feb. 2, 2005) ....................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)....................3

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)....................4

*In re Galena Biopharma, Inc. Derivative Litig.*,
83 F. Supp. 3d 1033 (D. Or. 2015) ....................11

*Gibbs v. Plain Green, LLC*,
331 F. Supp. 3d 518 (E.D. Va. 2018) ....................7, 8, 12, 13

*Grimm v. Gloucester Cnty. Sch. Bd.*,
2019 WL 13184819 (E.D. Va. June 21, 2019) ....................8, 13

*Hooker v. Sirius XM Radio, Inc.*,
2015 WL 10937407 (E.D. Va. Sept. 25, 2015)....................6

*Inloes v. Williams*,
2014 WL 819135 (E.D. Va. Feb. 28, 2014)....................9

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)....................3

*Lebanon Cnty. Emps.' Ret. Fund v. Collis*,
311 A.3d 773 (Del. 2023) ....................11

*Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*,
974 F.2d 502 (4th Cir. 1992) ....................4

*Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*,
415 U.S. 1 (1974)....................9

*Ret. Fund v. Collis*,
311 A.3d 773 (Del. 2023) ....................11

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
220 F.R.D. 246 (D. Md. 2004)....................12

*Scalable Insights, LLC v. Bihrle Applied Rsch., Inc.*,
2023 WL 8539533 (E.D. Va. Aug. 1, 2023)....................8, 12

*Seeks v. The Boeing Company*,
752 F. Supp. 3d 992 (N.D. Ill. 2024) ....................10

*Sehler v. Prospect Mortg., LLC*,
2013 WL 5184216 (E.D. Va. Sept. 16, 2013)....................13

*Williams v. Martorello*,
59 F.4th 68 (4th Cir. 2023) ....................4

*Williford v. Armstrong World Indus., Inc.*,
715 F.2d 124 (4th Cir. 1983) ....................1, 3

*In re WorldCom, Inc. Sec. Litig.*,
234 F. Supp. 2d 301 (S.D.N.Y. 2002)....................12

## PRELIMINARY STATEMENT

Plaintiffs have vigorously prosecuted this derivative action on Boeing's behalf and secured significant evidence demonstrating the strength of their claims. The remaining discovery will be completed by June 13 and will round out the evidentiary record.

Nonetheless, based on an unrelated class-certification appeal in the Securities Action, the Individual Defendants seek to delay this action by what could easily amount to eight months—until 2026.[1] Their stay motion fails each relevant factor and falls well short of presenting—as it must—"clear and convincing" evidence to justify a stay. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (affirming denial of stay).

First, the Securities Action appeal has no bearing on this case. The only issue in that appeal is whether, at the class certification stage, the Securities Action plaintiffs sufficiently described a class-wide damages methodology under Section 10(b) and Rule 23. That narrow procedural issue is wholly irrelevant in this derivative case, which is not a class action and seeks damages for ***harm to Boeing***.

Further, the Circuit will not—and cannot—review any merits issues in the Securities Action, including materiality, loss causation, and damages. As a result, there is no prospect of any "guidance" relevant here and no risk of inconsistent rulings. The Securities Action appeal also has no bearing on Plaintiffs' Section 14(a) claim, which the Individual Defendants ignore.

Second, a stay would undercut judicial economy and efficiency. Only one month of discovery remains, while the proposed stay would last at least eight months—twice as long as the entire discovery period to date.

[1] "Securities Action" refers to *In re Boeing Co. Securities Litigation*, No. 1:24-cv-151 (LMB/LRV) (E.D. Va.). Capitalized terms not defined herein have the meanings stated in the Complaint. Emphasis is added, and internal quotation marks and citations omitted, unless otherwise noted.

After the significant time and effort this Court, Judge Vaala, and the parties have devoted to advancing this case, it is far more efficient to complete the four weeks of remaining discovery now. Contrary to the Individual Defendants' assertions, that discovery is unique to this case and is not "duplicative" of the Securities Action. What remains is (i) targeted document discovery and depositions of five Director Defendants, who are not parties in the Securities Action and whom Securities Plaintiffs declined to depose; and (ii) entirely separate expert discovery. There is no efficiency in abruptly imposing a full stop on the last month of unique discovery here.[2]

Third, the Individual Defendants face no prejudice absent a stay. There is no "duplication," undue burden, or waste because the remaining discovery is unique and will be required regardless of the outcome of the Securities Action appeal. And while the Individual Defendants assert that a stay is warranted so this action does not "get ahead" of the Securities Action, they cite no case staying ***any*** derivative action at this late stage of discovery. Their contention that derivative actions must proceed "after" securities class actions is belied by two of the largest derivative cases in recent years—*Boeing I* and *FirstEnergy*—that advanced far more quickly than the related securities class actions. These derivative actions settled in 2021 and 2022, respectively, for $237.5 million and $180 million. By contrast, the related class actions remain ongoing today.

Finally, a stay would prejudice Plaintiffs and Boeing because of the length of the proposed stay—at least eight months, given the Circuit's typical time to decide appeals—and the burden and cost of suddenly stopping proceedings, only to resume eight months later. Equally important, stopping proceedings at this stage would hinder the thoughtful, fully informed mediation process that was initiated last month. At bottom, the Individual Defendants' desire for significant delay is

[2] Similarly, the most efficient and beneficial path is to proceed to summary judgment motions promptly after discovery closes. Among other benefits, advancing through pre-trial practice will sharpen each side's positions, narrow disputes, and focus the parties' assessment of the merits, including for purposes of a potential resolution.

contrary to Boeing's interest in recovering as soon as possible from the wrongdoers who inflicted substantial harm on the Company. Discovery has demonstrated the strength of Boeing's claims and confirmed that this case should proceed promptly.

The Court should deny the Individual Defendants' stay motion.

## ARGUMENT

The Individual Defendants "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay [they seek] will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Thus, the Individual Defendants must "justify" their stay request "by clear and convincing circumstances" that outweigh any potential harm to the non-movant. *Williford*, 715 F.2d at 127.

Here, the Individual Defendants fail to demonstrate any "hardship or inequity"—much less a "clear case"—from continuing to litigate this action in the ordinary course. *Aventis Pharma Deutschland GMBH v. Lupin Ltd.*, 403 F. Supp. 2d 484, 489 (E.D. Va. 2005). By contrast, Plaintiffs and Boeing will face significant, avoidable prejudice if this action is delayed for what would likely be at least eight months. Thus, "a stay is not merited." *Id.* (denying motion to stay).

## I. THE SECURITIES ACTION APPEAL HAS NO BEARING ON THIS ACTION

The Individual Defendants' motion fails at the outset because their sole basis for a stay—the class-certification appeal in the Securities Action—has no bearing on this derivative action.

First, the appeal is irrelevant because this derivative action is not a class action and does not involve class certification or class-wide damages. By contrast, the Securities Action appeal is confined to the so-called "*Comcast*" issue: whether a class-wide damages methodology was sufficiently described ***at the class certification stage***. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (addressing whether "damages are capable of measurement on a classwide basis" and the "application of class-certification principles").

The Rule 23(f) petition thus circumscribes the question presented to the following:

> Whether securities plaintiffs can satisfy their evidentiary burden under *Comcast* by having their expert recite the generally applicable rule for measuring damages for such claims and promise to develop a methodology for applying that rule to the particular facts of the case at a later date.

No. 25-135 (4th Cir. Mar. 21, 2025), Doc. No. 2, at 10. The "*Comcast*" issue is necessarily specific to class actions and consequently has no relevance to this derivative action, where there is no class and no class-wide damages methodology is required. Thus, no matter how the Circuit rules on class certification in the Securities Action, it will not affect this non-class case.

Second, the Individual Defendants wrongly speculate that the Circuit "may address issues of loss causation, damages, and materiality" in the Securities Action that could supposedly impact "this derivative case." None of these merits issues is presented in the Securities Action appeal, as the narrow question presented (quoted above) makes clear.[3] That is for good reason, since "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Williams v. Martorello*, 59 F.4th 68, 91 (4th Cir. 2023) (same). Specifically:

Materiality: The Circuit will not address materiality in the Securities Action appeal. Not only is such inquiry barred under controlling law, *see Amgen*, 568 U.S. at 468 ("plaintiffs are not required to prove materiality at the class-certification stage"), but the Securities Action defendants' own question presented to the Circuit makes no mention of materiality. *See supra*.

Loss Causation: The Supreme Court has made clear that courts cannot address loss causation at class certification. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804,

[3] *See Omni Outdoor Advert., Inc. v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir. 1992) (issue waived in part because the "'Questions Presented' section of [appellant's] opening brief . . . makes no mention of this theory").

813 (2011) (courts cannot require "loss causation as a condition of obtaining class certification"). Unsurprisingly, the defendants' question presented also makes no mention of loss causation.

Damages: Finally, the Securities Action appeal does not involve—and the Circuit will not address—the actual damages methodology the Securities Action plaintiffs offered at the merits stage. As the Court will recall, their expert's damages report was issued ***after*** this Court certified the class and is not part of the appellate record. Instead, the Circuit is only reviewing a narrow procedural issue specific to class certification: in the defendants' words, whether it is sufficient at class certification to "promise to develop a methodology" for measuring class-wide damages "at a later date."

Thus, while the Individual Defendants make much of whether "backcasting" artificial inflation in Boeing's share price is an appropriate damages methodology, that abstract question is not before the Circuit. As a result, there is no risk that Plaintiffs' calculation of Boeing's Section 10(b) damages would need to be "revisited later." (ECF 205 at 2.)

Crucially, the Individual Defendants entirely ignore Plaintiffs' Section 14(a) claim, where damages are not based on Boeing's share price. Instead, Section 14(a) damages are based on ***direct harm to Boeing*** in the wake of the Door Plug Blowout—including Boeing's payments of hundreds of millions of dollars to Alaska Airlines and other customers and the large financial impact of the FAA production cap. These Section 14(a) damages are completely divorced from the issue on appeal in the Securities Action.

* * *

In sum, the narrow class-certification appeal in the Securities Action is irrelevant to this derivative case. The Individual Defendants' effort to stretch the scope of the appeal beyond class certification and into subsequent merits issues—such as the details of Section 10(b) damages

calculations not yet presented to this Court, much less the Circuit—is misguided. The appeal also has no bearing on Plaintiffs' independent Section 14(a) claim. There is no prospect that the Circuit will provide any "guidance" that bears on this action, and no risk of inconsistent rulings, particularly since both this action and the Securities Action are before this Court.

## II. A STAY WOULD UNDERCUT JUDICIAL ECONOMY

A stay would be inefficient and undercut judicial economy for two reasons.

First, as detailed above, the Securities Action appeal has no impact on this case. Standing alone, that disconnect is sufficient to deny the Individual Defendants' motion. *See, e.g.*, *Hooker v. Sirius XM Radio, Inc.*, 2015 WL 10937407, at *3 (E.D. Va. Sept. 25, 2015) (denying stay where "[t]here is no evidence that the D.C. Circuit will issue a ruling on the FCC July 2015 Order that sufficiently addresses the specific issue relevant in this case").

Second, the limited remaining discovery is unique to this case and does not overlap with the Securities Action.

In the Securities Action, discovery was to close on May 16, 2025, and all discovery is complete except for expert depositions and one fact deposition (CFO Brian West). (Securities Action ECF 166 ¶¶7, 13.)

By contrast, discovery here is set to close on June 13. By then, Plaintiffs will depose five Director Defendants (*see* ECF 206)—although Defendants have yet to provide deposition dates, despite Plaintiffs identifying these deponents on April 11, over a month ago. These unique deponents are not parties, and are not being deposed, in the Securities Action. In addition, the Individual Defendants have noticed Plaintiffs' Rule 30(b)(6) depositions and the parties are

conferring about dates. The remaining expert discovery is also unique to this action. As a result, there is nothing left to "coordinate" and no prospect of any duplication absent a stay.[4]

The Individual Defendants concede—as they must—that the remaining discovery is unique and necessary in this action. Indeed, they previously stressed that the two actions have "inherent differences" and "different evidentiary needs." (ECF 105 at 2.) Thus, their assertions about inefficiency and "duplication" make no sense. For example, they assert that the parties may "need to take duplicate depositions of fact witnesses, both before the scheduled close of discovery on June 13, 2025, in the derivative action, and again after the Fourth Circuit rules in the Securities Action" (ECF 194 at 4), but that is wrong. In the Securities Action, fact depositions are over, with one exception (West). No other fact depositions overlap.

In fact, the Individual Defendants' proposal would be highly wasteful and inefficient: they suggest that all remaining discovery in this case should be put off until "after the Fourth Circuit decides the appeal." (ECF 205 at 3.) The median Fourth Circuit appeal takes 7.9 months to reach decision.[5] Given the May 2, 2025 grant of the Securities Action defendants' Rule 23(f) petition, the Circuit is unlikely to issue a decision until January 2026.

Suddenly stopping discovery and creating an eight-month gap in these proceedings would be both inefficient and out of proportion to the limited discovery that remains over the next four weeks. Such a lengthy delay would also create burden and inefficiency for the Court, which has devoted significant time and effort to advance the case to this point. *Cf. Gibbs v. Plain Green,*

---

[4] The Individual Defendants' Reply suggests coordination "past the discovery phase," but the Court only coordinated the two actions for "discovery," while ordering that the actions "shall not be consolidated" (ECF 145) and setting a separate date, June 18, for the final pretrial conference in this action (ECF 161 ¶3).

[5] *See* Table B-4, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2022.pdf (7.9-month median time to decision).

*LLC*, 331 F. Supp. 3d 518, 526 (E.D. Va. 2018) (denying motion to stay and noting that "granting a stay may waste judicial resources").

Thus, at this late stage, there is no reason to stop all remaining discovery and tack on at least eight months of delay—especially given this District's well-known "practice of moving cases expeditiously" and disfavor for delays, particularly where (as here) "defendants have already answered" the complaint and "discovery is well underway." *Scalable Insights, LLC v. Bihrle Applied Rsch., Inc.*, 2023 WL 8539533, at *3-4 (E.D. Va. Aug. 1, 2023) (denying defendants' request for a "short" stay).

## III. THE INDIVIDUAL DEFENDANTS FACE NO PREJUDICE ABSENT A STAY

The Individual Defendants will suffer no prejudice absent a stay, since the parties have already prosecuted this action to an advanced stage, and the remaining discovery is necessary in all events and unaffected by the Securities Action appeal.

First, the Individual Defendants fail to show any prejudice given that discovery is nearly complete. Far from being "irrelevant" to a stay, as they assert (ECF 205 at 3), "[i]n light of the late stage of this litigation, and the resources already expended by the parties, any value in granting the stay is diminished." *Grimm v. Gloucester Cnty. Sch. Bd.*, 2019 WL 13184819, at *2 (E.D. Va. June 21, 2019). Indeed, the Individual Defendants cite no case granting a stay at this late stage. Their own authority recognizes that "[w]hen courts *do* grant a stay, it is often early in litigation, to minimize prejudice to either party." *Gibbs*, 331 F. Supp. 3d at 528 (emphasis in original). The Individual Defendants declined to pursue a stay until near the end of discovery, and it is futile to do so now.

Second, there are no "additional expenses" absent a stay (ECF 205 at 3) because the limited remaining discovery must be completed regardless of the Securities Action appeal. Nothing will need to be re-done because the remaining discovery is unique to this action. Since there is no

dispute that this discovery is necessary, the Individual Defendants will suffer no prejudice. Indeed, it is significantly more efficient and economical to complete discovery now, when counsel and experts are fully engaged, then suddenly stopping and re-starting in 2026 on a dormant record.

Moreover, Boeing itself faces no undue cost or burden from the remaining discovery. Boeing is only a nominal defendant, while the remaining fact depositions are of Boeing outside directors (not Boeing officers or employees), and Boeing is not participating in expert discovery. And the remaining expert discovery is narrow: the Individual Defendants will serve rebuttal expert reports on May 21, and by the May 23 hearing on their stay motion, all that will remain are (1) Plaintiffs' expert reply reports (due June 4), and (2) expert depositions (by June 13).

In all events, it is well established that "mere litigation expense . . . does not constitute irreparable injury," and the Individual Defendants thus "have not shown that they would suffer hardship without a stay." *Atl. Coast Pipeline, LLC v. 1.52 Acres, More or Less, in Nottoway Cnty., Va.*, 2019 WL 4871481, at *1 (E.D. Va. Jan. 31, 2019) (citing *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 24 (1974)).

<u>Third</u>, the Individual Defendants suggest that a stay is warranted so this action does not "get ahead of" the Securities Action (ECF 205 at 3). However, they cite ***no case*** staying a derivative action where—as here—the Court has already sustained the allegations in the derivative action and discovery is nearly complete.

Instead, their cited cases all stayed derivative actions before decisions on motions to dismiss, when it was unclear whether the derivative claims would proceed at all. *See, e.g.*, *Inloes v. Williams*, 2014 WL 819135, at *2 (E.D. Va. Feb. 28, 2014) (granting stay before motion to dismiss where derivative plaintiffs had already agreed to stay pending termination of criminal

proceedings and had yet to obtain any discovery); *Brenner v. Albrecht*, 2012 WL 252286, at *3 (Del. Ch. Jan. 27, 2012).

By contrast, after the motion to dismiss, "[i]t is not at all unusual for securities fraud and related shareholder derivative cases to proceed along parallel tracks, without interfering with one another." *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 2005 WL 280345, at *6 (S.D. Ind. Feb. 2, 2005). This Court's effective management of both actions here is a case in point.

Further refuting the Individual Defendants' position, it is common for the derivative action to "get ahead" of the securities case. That is exactly what happened in the prior Boeing derivative litigation, *Boeing I*—although the Individual Defendants tellingly make no mention of it in their papers. *Boeing I* advanced through the motion to dismiss and settled in November 2021 for $237.5 million,[6] while the related securities class action was (and still is) pending.[7]

Likewise, the *FirstEnergy* derivative action advanced past a motion to dismiss and settled for $180 million in February 2022, while the securities class action was still awaiting a decision on the motions to dismiss. *See* Joint Motion to Stay, *Emps. Ret. Sys. of the City of St. Louis v. Jones*, No. 2:20-cv-04813 (S.D. Ohio Feb. 10, 2022), ECF 166; Opinion and Order, *In re FirstEnergy Corp. Sec. Litig.*, No. 2:20-cv-04287 (S.D. Ohio Mar. 7, 2022), ECF 86; *see also In re Facebook, Inc. Derivative Litig.*, C.A. No. 2018-0307-KSJM, Amended Joint Stipulation and Order Governing Case Schedule (Del. Ch. May 5, 2025) (scheduling derivative action trial for July 2025 despite securities class action still being in early stages of discovery).

[6] *See* Stipulation and Agreement of Compromise, Settlement, and Release, *In re The Boeing Company Derivative Litig.*, C.A. No. 2019-0907-MTZ (Del. Ch. Nov. 5, 2021).

[7] *See Seeks v. The Boeing Company,* 752 F. Supp. 3d 992 (N.D. Ill. 2024) (denying motion to dismiss and explaining that the securities action was initially filed on February 14, 2020).

Finally, the Individual Defendants' opening memorandum speculates that Boeing could somehow be prejudiced by a hypothetical "conflict" between its positions in the Securities Action and here (although the Individual Defendants appear to abandon this argument in their May 13 brief, ECF 205). But the Individual Defendants could have asserted that hypothetical "conflict" at the outset. Tellingly, they did not. And taken to its logical conclusion, the Individual Defendants' argument would prevent every derivative action from being litigated during a related securities class action. As shown above, that is not reality.

In any event, the Individual Defendants identify no actual conflict, and they are wrong as both a legal and practical matter. Legally, only the Individual Defendants are defending this case. Boeing is merely a nominal defendant and has separate counsel. Plaintiffs—not Boeing itself—are pursuing Boeing's valuable claims against the Individual Defendants, leaving Boeing free to defend itself in the Securities Action. Thus, "[t]he argument that [Boeing's] interests in the derivative action conflict with its interests in the securities class action is formalistic and sacrifices pragmatic common sense," and Defendants "fail to show a genuine conflict." *In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1033, 1043-44 (D. Or. 2015).

Practically, the Individual Defendants ignore that both actions have been litigated in parallel since inception, and no harm has resulted. It also bears noting that Boeing itself has not sought a stay or asserted any "conflict." Only the Individual Defendants—whose interests are directly adverse to Boeing—have done so.[8]

---

[8] *Cf. Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 311 A.3d 773, 805 (Del. 2023) ("Relatedly, we are not moved by defendants' handwringing claim that, if the Court of Chancery's analysis of the adequacy of the plaintiffs' [derivative] pleading is allowed to stand, it will 'chill' companies' ability to defend lawsuits."); *In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*, 2024 WL 3694533, at *24 (N.D. Ill. Aug. 7, 2024) (rejecting defendants' argument that allowing derivative claims to proceed "could harm Abbott in future lawsuits brought against the company because of the underlying conduct").

## IV. A STAY WOULD SIGNIFICANTLY PREJUDICE PLAINTIFFS AND BOEING

Plaintiffs and Boeing would be prejudiced if this action were suddenly stayed. In this regard, "[c]ourts consider the length of the proposed delay, as well as potential for ongoing harm to the non-moving parties." *Gibbs*, 331 F. Supp. 3d at 527. Both factors counsel against a stay.

First, implementing an immediate, full stop to these proceedings—as the Individual Defendants urge—is not only unwarranted but highly prejudicial to Plaintiffs and Boeing. A stay would deprive Plaintiffs of timely depositions of the five Director Defendants, as well as timely completion of the remaining expert discovery. As to depositions, witnesses' memories fade, and a prolonged stay runs the risk of loss of evidence. And there is significant burden and expense to stop and restart expert discovery in eight months. The Individual Defendants' cumbersome proposal that Plaintiffs "reserve the right to serve revised opening expert reports" after a Circuit decision (ECF 205 at 4)—*i.e.*, next year—underscores the point.[9]

Equally important, imposing at least eight months of delay to complete discovery and proceed to summary judgment motions would significantly hinder any prospect of a prompt resolution for Boeing's benefit. *See, e.g.*, *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305-06 (S.D.N.Y. 2002) (explaining that continued stay and lack of discovery is "especially troubling given the likelihood that settlement discussions will begin" and plaintiffs "would be severely disadvantaged in those discussions if they are denied access to the documents they now request"); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 252 (D. Md. 2004) (lifting discovery stay and holding that plaintiffs faced "a severe disadvantage in formulating their litigation and settlement strategy"); *Scalable Insights*, 2023 WL 8539533, at *3 (explaining that

[9] The Individual Defendants wrongly suggest that the Securities Action plaintiffs' agreement to stay the Securities Action somehow "confirm[s] that there is no prejudice to Plaintiffs here." (ECF 194 at 7.) In the Securities Action, the existence of a class needs to be resolved before summary judgment and trial. No such issue exists here.

"any discovery suspension now is likely to delay the timely resolution of this dispute, contrary to the need for the prompt administration of justice").

Second, the length of the proposed delay is excessive. Courts commonly recognize that plaintiffs "can suffer prejudice when a stay is reasonably expected to cause a significant delay in proceedings." *Gibbs*, 331 F. Supp. 3d at 527.

As noted above, the Securities Action appeal is likely to take at least eight months to resolve, meaning a stay would extend into 2026. That lengthy delay—nearly as long as the entire time this action has been pending—is well within the range deemed prejudicial in this District. *See Grimm*, 2019 WL 13184819, at *1-2 (denying stay that "could delay resolution for a year or more"); *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2013) (denying stay and finding potential delay of four to six months "significant" and prejudicial).

Here, the prejudice is particularly acute because Boeing has suffered severe harm from the Individual Defendants' misstatements, the Securities Action appeal has no bearing on this case, and delaying resolution and recompense to Boeing for at least eight months is unwarranted. The merits are strong (*see* ECF 199 through 199-4), and Boeing's interest in a timely recovery outweighs the Individual Defendants' self-serving desire for delay.

## CONCLUSION

For the foregoing reasons, the Individual Defendants' motion should be denied.

Dated: May 16, 2025

Respectfully submitted,

*/s/ Susan R. Podolsky*

**LAW OFFICE OF SUSAN R. PODOLSKY**
Susan R. Podolsky
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
(571) 366-1702
spodolsky@podolskylaw.com

*Counsel for Plaintiffs Ohio Public Employees Retirement System and State Teachers Retirement System of Ohio*

**BLEICHMAR FONTI & AULD LLP**
Derrick B. Farrell (*pro hac vice*)
Matthew L. Miller (*pro hac vice*)
3411 Silverside Road
Baynard Building, Suite 104
Wilmington, Delaware 19810
(302) 499-2158
dfarrell@bfalaw.com
mmiller@bfalaw.com

Lesley E. Weaver (*pro hac vice*)
1330 Broadway, Suite 630
Oakland, California 94612
(415) 445-4004
lweaver@bfalaw.com

Joseph A. Fonti (*pro hac vice*)
Evan A. Kubota (*pro hac vice*)
Thayne Stoddard (*pro hac vice*)
300 Park Avenue, Suite 1301
New York, New York 10022
(212) 789-1340
jfonti@bfalaw.com
ekubota@bfalaw.com
tstoddard@bfalaw.com

**GRANT & EISENHOFER P.A.**
Christine M. Mackintosh (*pro hac vice*)
Kelly L. Tucker (*pro hac vice*)
Vivek Upadhya (*pro hac vice*)
123 Justison Street
Wilmington, Delaware 19801
(302) 622-7000
cmackintosh@gelaw.com
ktucker@gelaw.com
vupadhya@gelaw.com

*/s/ Charles L. Williams*
Charles L. Williams
**WILLIAMS & SKILLING, P.C.**
7104 Mechanicsville Turnpike, Suite 204
Mechanicsville, Virginia 23111
(804) 447-0307
cwilliams@williamsandskilling.com

*Counsel for Plaintiff Oklahoma Firefighters Pension and Retirement System*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Geoffrey M. Johnson (*pro hac vice*)
12434 Cedar Road, Suite 12
Cleveland Heights, Ohio 44106
(216) 229-6088
gjohnson@scott-scott.com

Donald A. Broggi (*pro hac vice*)
Jing-Li Yu (*pro hac vice*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, New York 10169
(212) 223-6444
dbroggi@scott-scott.com
jyu@scott-scott.com

Maxwell R. Huffman (*pro hac vice*)
Ora Laine Lupear (*pro hac vice*)
600 W. Broadway, Suite 3300
San Diego, California 92101
(619) 233-4565
mhuffman@scott-scott.com
olupear@scott-scott.com

Justin O. Reliford (*pro hac vice*)
Elizabeth K. Dragovich (*pro hac vice*)
222 Delaware Avenue, Suite 1050
Wilmington, Delaware 19801
(302) 578-7345
jreliford@scott-scott.com